**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

|  |  |
|---|---|
| **In re:** | **Chapter 11 (Subchapter V)** |
|  | **Jointly Administered** |
| **A1 TRANSPORT NETWORK, INC.** | **Case No. 24-17287-RAM** |
| **AB BROTHERS USA INC.** | **Case No. 24-17288-RAM** |
| _____Debtors._____/ |  |

**DEBTORS' EMERGENCY MOTION FOR**
**TURNOVER OF PROPERTY OF THE ESTATE**

**(Emergency Hearing Requested Pursuant to Local Rule 9075-1)**

**Statement of Exigent Circumstances**

**The Debtors seek immediate turnover of funds that constitute property of the estate that are being unreasonably retained by the Debtors' factor. The withheld funds are necessary for the Debtors to satisfy post-petition obligations that were necessary for the continued operation of their businesses. The factor's delay in turning over the funds has caused the Debtors to cease operations and has jeopardized any hope of a successful reorganization. The factor's continued withholding of said funds is unjustified and serves only to cause further irreparable harm to the Debtors and those who the Debtors have been unable to pay.**

Debtors, A1 TRANSPORT NETWORK, INC. ("A1"), and AB BROTHERS USA INC. ("AB"), by and through their undersigned counsel, hereby move this Court on an expedited basis, pursuant to Local Rule 9075-1 and 11 U.S.C. § 542(a), for entry of an Order Compelling Freight Factoring Services, LLC to Turnover of Property of the Estate, and in support thereof, state as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

1

**SCHATZMAN & SCHATZMAN, P.A.**
**9990 S.W. 77TH AVENUE ● PENTHOUSE 2 ● MIAMI, FLORIDA  33156**

3.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4.      On July 20, 2024, the Debtors each filed voluntary petitions for relief under Subchapter V of Chapter 11 of the U.S. Bankruptcy Code (the Petition Date").

5.      The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to 11 U.S.C. § 1184.

6.      On July 22, 2022, the Court entered an Order Jointly Administering the Debtors' Chapter 11 Cases [D.E. #10].

## POST-PETITION TRANSACTIONS

7.      For over eight years prior to the Petition Date, the Debtor had a factoring relationship with Freight Factoring Services, LLC ("FFS").  On May 23, 2016, A1 and FFS entered into a Master Factoring Agreement, a copy of which is attached hereto and made a part hereof as Exhibit "A".

8.      On February 29, 2017, AB and FFS entered into a Master Factoring Agreement, a copy of which is attached hereto and made a part hereof as Exhibit "B".

9.      Over the term of the Debtors' relationship with FFS, the Debtors had developed reliable sources of freight brokers who consistently paid their invoices on time.  Due to the low risk of the Debtors' receivables, FFS agreed reduced its factoring fee to 1.5% with no hold back or recourse as evidenced by the confirming email sent by FFS to A1 on November 2, 2020, a copy of which is attached hereto and made a part hereof as Exhibit "C".

10.      In addition to the Master Factoring Agreements, FFS also provided other sources of funding for the Debtors.  On April 25, 2024, AB and FFS entered into an Amendment to Factoring Master Agreement (a copy of which is attached hereto and made a part hereof as Exhibit "D") that provided for an Overadvance, for which FFS required AB to pay an amount equal to one and 50/100

**SCHATZMAN & SCHATZMAN, P.A.**
**9990 S.W. 77TH AVENUE ● PENTHOUSE 2 ● MIAMI, FLORIDA  33156**

percent (1.50%) of the amount of the Overadvance for the first seven (7) day period after the Overadvance is transmitted to FSS plus one and 50/100 percent (1.50%) for each additional seven (7) day period or part thereof until payments received by FSS in collected funds equals the amount of the Overadvance, plus all charges due FSS from AB at the time (the "Overadvance").[1]

**11.**     As of the Petition Date, FFS claims that AB owed FSS $47,610.00 on an Overadvance in the original amount of $60,000.00 which was funded on April 26, 2024.

**12.**     Commencing August 1, 2022, and continuing on or about the first day of each month thereafter through the Petition Date, FFS also loaned the Debtors the sum of $100,000.00 each month.  FFS's terms for repayment were that each month, approximately one week after funding, FFS would withdrawal $4,000.00[2] from AB's account, then FFS would apply $50,000.00 of the Debtor's receivables submitted to FFS three weeks after funding and then another $50,000.00 of the Debtor's receivables submitted to FFS four weeks after funding, so that the full balance would be paid off by the end of each month.  Depending on how one would calculate it, the monthly loans of $100,000.00 bear interest at a minimal rate of 48% per annum (if calculated at 4% per month).[3]

---

[1] The interest rate on the Overadvance extrapolates to a rate of 78% per annum.

[2] The Debtors' understanding was that FFS would charge 4% interest for each $100,000.00 loan, but in actuality, the amount FFS drew monthly from AB's account would randomly range from $3,750.00 to $4,500.00.

[3] Section 687.04, Fla. Stat., provides:
> Any person, or any agent, officer, or other representative of any person, willfully violating the provisions of s. 687.03 shall forfeit the entire interest so charged, or contracted to be charged or reserved, and only the actual principal sum of such usurious contract can be enforced in any court in this state, either at law or in equity; and when said usurious interest is taken or reserved, or has been paid, then and in that event the person who has taken or reserved, or has been paid, either directly or indirectly, such usurious interest shall forfeit to the party from whom such usurious interest has been reserved, taken, or exacted in any way double the amount of interest so reserved, taken, or exacted.

Section 687.071(3) Fla. Stat., provides:
> Unless otherwise specifically allowed by law, any person making an extension of credit to any person, who shall willfully and knowingly charge, take, or receive interest thereon at a rate exceeding 45 percent per annum or the equivalent rate for a longer or shorter period of time, whether directly or

**SCHATZMAN & SCHATZMAN, P.A.**
9990 S.W. 77TH AVENUE ● PENTHOUSE 2 ● MIAMI, FLORIDA  33156

13.     Subsequent to the Petition Date, the Debtor commenced negotiations with FSS to continue its factoring arrangement.  FSS was reluctant to continue factoring without being paid in full on its pre-petition debt.[4]  After being advised that under the Bankruptcy Code, the Debtors could not pay FFS on any of the pre-petition obligations, FFS reluctantly agreed to continue factoring provided the parties would continue to work towards and amicable resolution of FFS's pre-petition claims.

14.     On July 25 and 26, 2024, after reaching an understanding with FFS, the Debtors placed a total of $162,211.57 of receivables with FFS who accepted the receivables but only remitted $20,000.00 to the Debtors.  The Debtors anticipated receiving 98.5% of the submitted receivables in accordance with the parties' pre-petition arrangement.  Although FFS accepted the receivables and notified the Debtors' customers that it owned the receivables, notwithstanding the Debtors continued requests, FFS has refused to remit the $139,778.40[5] it owes to the Debtors.

15.     FFS was fully aware that if the Debtors did not receive funding on the factored receivables that they would not be able to pay the drivers that were in route with deliveries; would not be able to pay for the fuel necessary for the drivers to continue their routes; and would not be able to pay the insurance premiums that were coming due.

---

indirectly or conspire so to do, commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

[4] FFS claims to be owed a total of $187,370.00 as of the Petition Date - $100,000.00 for the July 1, 2024 loan; $47,610.00 for the balance due on the $60,000.00 Overadvance; $30,000.00 for fuel advances; and $9,760.00 for a prior chargeback.

[5] The amount due of $139,778.40 is equal to 98.5% of the $162,211.57 of receivables placed with FFS ($159,778.40), less the $20,000.00 paid by FFS.

4

16.     As a result of FFS's refusal to fund the Debtors, the Debtors have been unable to pay their drives, the insurance premiums that are now past due or any other operating expenses, and therefore, have had no choice but to cease operations.

17.     The Debtors have been severely damaged by FFS's refusal to honor its agreement and remit funds to the Debtors, which funds constitute property of the estate.

## RELIEF REQUESTED

18.     The Debtors seek an order from this Court directing FFS to turn over to the Debtors the sum of $139,778.40 and such other sums due for violations under Chapter 687 of Florida Statutes, all of which constitute property of the estate pursuant to 11 U.S.C. § 541.

## BASIS FOR RELIEF

19.     Pursuant to 11 U.S.C. § 542(a), "an entity in possession, custody, or control . . . of property that the [Debtors] may use, sell, or lease under section 363 of this title . . ., shall deliver to the [Debtors], and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."

20.     The funds that FFS is holding are substantial and are necessary for payment of post-petition expenses that the Debtors have incurred in the ordinary course of their businesses, including compensation owed to drivers who continued their routes in anticipation of being compensated, warehouse fees for services rendered for loading and deliveries of freight and other expenses incurred, that would have otherwise been paid in the ordinary course of the Debtors' businesses had FFS timely funded the receivables it accepted from the Debtors.

21.     The receivables placed with FFS were generated post-petition and constitute property of the estate.

5

**SCHATZMAN & SCHATZMAN, P.A.**
**9990 S.W. 77TH AVENUE ● PENTHOUSE 2 ● MIAMI, FLORIDA  33156**

22.      Although FFS may claim that it had a pre-petition security interest in the Debtors'

receivables, such lien would only extend to receivables generated pre-petition.  Section 552 of the

Bankruptcy Code governs this situation.

> (a)      Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

11 U.S.C. § 552(a).

23.      FFS is improperly retaining property of the estate in willful disregard to the Debtors'

demands that such property be turned over to the Debtors.

24.      Additionally, FFS has exacted usurious interest from the Debtors which also

constitutes property of the estate that FFS is required, pursuant to Florida law, to return to the

Debtors.

25.      As a result of FFS's violations of Florida law and its failure to comply with its

obligations under the Bankruptcy Code, the Debtors have incurred unnecessary attorney's fees and

costs in having to bring this Motion.

## CERTIFICATION OF BONA FIDE EFFORT
## TO RESOLVE THE MATTER WITHOUT HEARING

26.      Commencing with the filing of the Debtors' Subchapter V cases, the Debtors have

made diligent efforts to negotiate the continuation of their factoring arrangement with FFS.

Although it appeared that all parties were on a path to an amicable agreement, after the Debtors

placed the $162,211.57 of receivables with FFS post-petition, FFS unexpectedly refused to remit

payment to the Debtors for the receivables.

**SCHATZMAN & SCHATZMAN, P.A.**
9990 S.W. 77TH AVENUE ● PENTHOUSE 2 ● MIAMI, FLORIDA  33156

27.     Since that time, the Debtors and FFS through their counsel have continued to communicate in hopes of coming to an agreement or convincing FFS to at least fund the $139,778.40 due to the Debtors, but FFS has refused to do either.

28.     The Debtors have made every attempt to resolve this dispute without the Court's assistance, but have resigned to the fact that FFS's refusal to turn over property of the estate can only be accomplished with the Court's intervention.

**WHEREFORE**, the Debtors, A1 TRANSPORT NETWORK, INC., and AB BROTHERS USA INC., respectfully request that this Court enter an Order Compelling FREIGHT FACTORING SERVICES, LLC to turn over to the Debtors the sum of $139,778.40 due on the receivables placed with FFS; all principal and interest required to be returned to the Debtors under Chapter 687, Florida Statutes; reasonable attorney's fees and costs; and for such other and further relief as this Court deems just and proper.

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

**I HEREBY CERTIFY** that a true copy of the foregoing was served on all parties listed on the Notice of Electronic Filing generated with the filing of this Motion, this 15th day of August, 2024.

> **SCHATZMAN & SCHATZMAN, P.A.**
> Attorneys for the Debtors
> 9990 S.W. 77th Avenue
> Penthouse 2
> Miami, Florida 33156
> (305) 670-6000
> JSchatzman@Schatzmanlaw.com
>
> By:   */s/ Jeffrey N. Schatzman*
> **JEFFREY N. SCHATZMAN, ESQ.**
> Fla. Bar No.: 818501

7

# EXHIBIT A

## FREIGHT FACTORING

Application & SIGN UP

### STEP 1

**ABOUT YOUR BUSINESS**

SELLER: A1 Transport Network, inc

OTHER TRADE NAMES OR DBAs _N/A_

US DOT#: 1822113   MC#: N/A   EIN/Tax ID 26-0514861   EMAIL: A1 transportnetwork@gmail.com

PHONE: ███████   FAX: ███████   OFFICE MANAGER: Ivan Antigua

BUSINESS ADDRESS: 10302 NW South ave de #12  CITY: Medley  STATE: FL  ZIP: 33178

**COMPANY INFORMATION**
- ☑ CORPORATION
- ☐ LLC
- ☐ INDIVIDUAL
- ☐ PARTNERSHIP

FORMED IN WHICH STATE? FL

YEARS IN BUSINESS? 7

**COMPANY TRUCKS**
- # OWNED: 3
- # LEASED: _
- # TRAILERS: _
- # OF OWNER OPERATORS LEASED ON:

**CHECK ALL THAT APPLY:**
- ☐ BACK TAXES
- ☐ JUDGMENTS & LIENS
- ☐ LAWSUITS
- ☐ CRIMINAL CONVICTIONS

EXPLAIN:

**EXPERIENCE**
YEARS IN TRANS. INDUSTRY: 7

TYPE OF EXPERIENCE:

**DESCRIBE YOUR GROWTH PLANS:**

**I AM ALSO INTERESTED IN:**
- ☐ THE FFS FUEL CARD
- ☐ TRUCK TRAILER LEASE PROGRAM
- ☑ FUEL ADVANCES

**ABOUT YOUR ACCOUNTS RECEIVABLE**

AMOUNT YOU INTEND TO FACTOR MONTHLY: $ 25,000   HOW SOON DO YOU INTEND TO START FACTORING? When is ready

HAS ANY OWNER EVER FACTORED OR BORROWED AGAINST YOUR RECEIVABLES? ☑ NO ☐ YES   WITH WHOM? _____

ARE YOU CURRENTLY IN A FACTORING RELATIONSHIP? ☑ NO ☐ YES WITH WHOM? _____

### RATES

**YOUR CUSTOMIZED RATES**

SELLER:

| | |
|---|---|
| ADVANCE/RESERVE % | |
| ADMINISTRATIVE FEE % | |
| SELLING TERM | |
| SERVICE CHARGE % | |
| SERVICE CHARGE PERIOD | |
| LATE PAYMENT DATE PERIOD | |
| NON-RECOURSE CREDIT GUARANTEE FEE | |
| DOCUMENTATION FEE | |
| MINIMUM MONTHLY FEE | |
| PROJECTED MONTHLY VOLUME | |
| TERM | |

**Receivable Finance Facility:**
*For higher facilities, additional documentation is required.*

#### UNDERSTANDING YOUR RATE TABLE (Yes)

We strive to be transparent in our fees and charges! Please review with your Factoring Consultant.

- Receivable finance facility: We will purchase your eligible invoices up to this amount (outstanding balance). It refers to the face value of invoices. Additional documentation is required to qualify for a higher facility.

- Your fees: We charge an Admin Fee and if applicable, a Service Charge depending on when we receive payment for your invoices. After the "late Payment Period" your invoices are considered 'late', and subject to chargeback unless other arrangements are made.

- As utilized fees: As listed.

- Documentation fee: This will not apply if your initial funding is $10k or higher.

- Term: We pride ourselves on keeping you happy. We don't have any long-term commitments. Just notify us at any time during a month that you want to leave and we'll close out your account within 30 days.

**AS UTILIZED FEES**

Postage, envelopes, and handling fees: $0
Wires: $15
ACH: $0
Check by Mail: $0
FFS Fuel Card: $
Advance %

**FEE NOTES:**

OWNER INITIAL HERE __IA__   Date: 5/3/2016

## FREIGHT FACTORING

Page 2

## MASTER FACTORING AGREEMENT

This Factoring Master Agreement ("Agreement") is made by and between Freight Factoring Specialists, LLC, whose principal place of business is located at 3284 N. 29th Ct, Hollywood, Florida 33020, the Purchaser, and/or its agents, affiliates, successors and/or assigns, as the party of the first part, and the Seller (as identified above) and each Owner & Guarantor (as identified below), as the party or parties of the second part, and incorporates into this Agreement by this reference, as if fully set forth, the Factoring Agreement Terms and Conditions (the "Terms and Conditions") which the party or parties of the second part hereby acknowledge are published on Purchaser's website (truckingcapital.com/terms) and have been fully read, and which have been separately provided by Purchaser to the party or parties of the second part for later execution, which the party or parties of the second part hereby acknowledge and agree that such later execution shall be deemed to be and shall constitute the further ratification and reconfirmation thereof as being part of and included within this Agreement. The party or parties of the second part hereby agree, at all times subject to and governed by the Terms and Conditions, that factoring rates and other financial terms which are set forth and described in Section B of this Agreement shall apply to this Agreement, and to the relationship of all of the parties hereto, through and until the termination of this Agreement, unless and until such factoring rates and other financial terms may be expressly modified or amended in a writing which is executed by all of the parties hereto. If there is no "non-recourse credit guarantee fee" fee provided for in the Rate Table of Step 2, the applicable account(s) are to be deemed as recourse accounts for purposes of the Agreement. By executing this Agreement, the party or parties of the second part hereby expressly acknowledge and agree to the Terms and Conditions of this Agreement, and further represent and warrant to the party of the first part that (i) they have read the Terms and Conditions, (ii) the Terms and Conditions are hereby ratified and confirmed and are in full force and effect as a part of this Agreement, just as if they were an actual part of this Agreement, (iii) the Terms and Conditions are legally binding upon them in all respects, and (iv) the Terms and Conditions supersede any and all prior understandings, negotiations, arrangements or agreements between the party of the first part and the party or parties of the second part with respect to the subject matter hereof. Each Owner & Guarantor (as identified below) hereby agrees to fully, completely, unconditionally and irrevocably guaranty to the party of the first part the full and prompt payment and performance of any and all obligations, indebtedness and liabilities of every kind or character whatsoever of the Seller (as identified above) which arises under, out of or in connection with this Agreement, which obligations, indebtedness and liabilities shall be deemed and considered to be the non-contingent, direct, independent and primary obligations of each such Owner & Guarantor which are separate, distinct and apart from those obligations, indebtedness and liabilities which are due and owing to the party of the first part by the Seller under and/or pursuant to this Agreement. The party or parties of the second part hereby expressly (i) agree to the grant of a continuing first priority security interest to the party of the first part over, upon in and to the Collateral in order to secure the obligations, indebtedness and liabilities which are due and owing to the party of the first part by the party or parties of the second part under and/or pursuant to this Agreement, (ii) authorize party of the first part to obtain consumer credi report information, (iii) acknowledge that the party of the first part shall be considered to be Secured Party under and within the meaning of the Uniform Commercial Code and shall be accorded all of the rights and privileges afforded to such designee, and (iv) authorize and direct the party of the first part in such capacity to file a financing statement for the Collateral as contemplated by and otherwise within the purview of Article 9 of the Uniform Commercial Code. Any and all terms used herein having their initial letters capitalized shall be considered to be defined terms which have the meanings ascribed to them in the Terms and Conditions, unless otherwise expressly defined herein in a contrary or inconsistent manner.

## STEP 3: OWNERSHIP: PLEASE ACCOUNT FOR 100%

| | OWNER 1 & GUARANTOR | OWNER 2 & GUARANTOR | OWNER 3 & GUARANTOR |
|---|---|---|---|
| OWNER NAME | Ivan Antrig | | |
| TITLE | President | | |
| HOME ADDRESS | 14741 SW 9 lane | | |
| CITY, STATE, ZIP | Miami, Fl 33194 | | |
| CELL PHONE | ▓▓▓▓▓▓ | | |
| SS# | ▓▓▓▓▓▓ | | |
| DOB | N/A | | |
| % OWNED | 100% | | |
| SIGNATURE | SIGN: _(signed)_  DATE: 5-3-2016 | SIGN:  DATE: | SIGN:  DATE: |

## NEXT STEPS

☐ Forward a copy of your insurance certificate
☐ Take a photo of each owner's drivers license
☐ Scan or take a photo of a voided check for your business
☐ Gather owner/operator agreements (if applicable)
☐ Gather aging report and customer list (if applicable)

**SEND ALL ITEMS LISTED TO:**
apply@truckingcapital.com OR
Fax: (813) 773-4001

| FFS USE ONLY | | | |
|---|---|---|---|
| Purchaser: Freight Factoring Specialists LLC  Place of acceptance: Hollywood, FL | Date of acceptance: _____ | By: _____  Authorized signor | Title: _____ |



## Application ❖ SIGN UP
### AND FACTORING MASTER AGREEMENT

# EXHIBIT B

## STEP 1

### ABOUT YOUR BUSINESS

SELLER: AB Brothers USA Inc

OTHER TRADE NAMES OR DBAs  AB BROTHERS USA INC                    EIN/Tax ID  81-2836428

US DOT#:  2898611              MC#:  974610            EMAIL: abbrothersusa@gmail.com

PHONE:                         FAX:                    OFFICE MANAGER:  ivan antigua

BUSINESS ADDRESS:  14741 sw 9 lane          CITY:  maimi          STATE:  FL     ZIP:  33194

| COMPANY INFORMATION | COMPANY TRUCKS | CHECK ALL THAT APPLY: | EXPERIENCE | DESCRIBE YOUR GROWTH PLANS: | I AM ALSO INTERESTED IN: |
|---|---|---|---|---|---|
| ● CORPORATION | # OWNED: 2 | ☐ BACK TAXES | YEARS IN TRANS. INDUSTRY: 1 | | ☐ THE FFS FUEL CARD |
| ○ LLC | # LEASED: | ☐ JUDGMENTS & LIENS | | | ☐ TRUCK TRAILER LEASE PROGRAM |
| ○ INDIVIDUAL | # TRAILERS: 2 | ☐ LAWSUITS | | | ☐ FUEL ADVANCES |
| ○ PARTNERSHIP | # OF OWNER OPERATORS LEASED ON: | ☐ CRIMINAL CONVICTIONS EXPLAIN: | TYPE OF EXPERIENCE: | | |
| FORMED IN WHICH STATE? fl | | | | | |
| YEARS IN BUSINESS? 1 | | | | | |

### ABOUT YOUR ACCOUNTS RECEIVABLE

AMOUNT YOU INTEND TO FACTOR MONTHLY: $ _____    HOW SOON DO YOU INTEND TO START FACTORING? _____

HAS ANY OWNER EVER FACTORED OR BORROWED AGAINST YOUR RECEIVABLES?  ○ NO  ● YES    WITH WHOM? _____

ARE YOU CURRENTLY IN A FACTORING RELATIONSHIP?    NO        YES WITH WHOM? _____

## RATES

### YOUR CUSTOMIZED RATES

SELLER: AB Brothers USA Inc

| | |
|---|---|
| ADVANCE/RESERVE % | 97.25% / 2.75% |
| ADMINISTRATIVE FEE % | 2.75% |
| SELLING TERM | 60 days |
| SERVICE CHARGE % | N/A |
| SERVICE CHARGE PERIOD | N/A |
| LATE PAYMENT DATE PERIOD | 60 Days |
| NON-RECOURSE CREDIT GUARANTEE FEE | Not Included |
| DOCUMENTATION FEE | $0 - No setup charge |
| MINIMUM MONTHLY FEE | $0 |
| PROJECTED MONTHLY VOLUME | $20,000 |
| TERM | One (1) year from first Purchase |

**Receivable Finance Facility:** $100,000
*For higher facilities, additional documentation is required.*

### UNDERSTANDING YOUR RATE TABLE

We strive to be transparent in our fees and charges! Please review with your Factoring Consultant.

- Receivable finance facility: We will purchase your eligible invoices up to this amount (outstanding balance). It refers to the face value of invoices. Additional documentation is required to qualify for a higher facility.

- Your fees: We charge an Admin Fee and if applicable, a Service Charge depending on when we receive payment for your invoices. After the "late Payment Period" your invoices are considered 'late', and subject to chargeback unless other arrangements are made.

- As utilized fees: As listed.

- Documentation fee: This will not apply if your initial funding is $10k or higher.

- Term: We pride ourselves on keeping you happy. We don't have any long-term commitments. Just notify us at any time during a month that you want to leave and we'll close out your account within 30 days.

### AS UTILIZED FEES
Postage, envelopes, and handling fees: $0
Wires: $25
ACH: $0
Check by Mail: $0
FFS Fuel Card: $ 0
Advance %   1%

### FEE NOTES:
All funding options are free except wires. EFS charges a fee for of $1.95 for funding to fuel card. Invoices under $500 subject to $15 handling fee each

*johania tomas*

OWNER INITIAL HERE _____ Date: 02/09/2017



Page **2**

**AGREEMENT**

## MASTER FACTORING AGREEMENT

This Factoring Master Agreement ("Agreement") is made by and between Freight Factoring Specialists, LLC, whose principal place of business is located at 3284 N. 29th Ct, Hollywood, Florida 33020, the Purchaser, and/or its agents, affiliates, successors and/or assigns, as the party of the first part, and the Seller (as identified above) and each Owner & Guarantor (as identified below), as the party or parties of the second part, and incorporates into this Agreement by this reference, as if fully set forth, the Factoring Agreement Terms and Conditions (the "Terms and Conditions") which the party or parties of the second part hereby acknowledge are published on Purchaser's website (truckingcapital.com/terms) and have been fully read. The party or parties of the second part hereby agree, at all times subject to and governed by the Terms and Conditions, that factoring rates and other financial terms which are set forth and described in Section B of this Agreement shall apply to this Agreement, and to the relationship of all of the parties hereto, through and until the termination of this Agreement, unless and until such factoring rates and other financial terms may be expressly modified or amended in a writing which is executed by all of the parties hereto. If there is no "non-recourse credit guarantee fee" fee provided for in the Rate Table of Step 2, the applicable account(s) are to be deemed as recourse accounts for purposes of the Agreement. By executing this Agreement, the party or parties of the second part hereby expressly acknowledge and agree to the Terms and Conditions of this Agreement, and further represent and warrant to the party of the first part that (i) they have read the Terms and Conditions, (ii) the Terms and Conditions are hereby ratified and confirmed and are in full force and effect as a part of this Agreement, just as if they were an actual part of this Agreement, (iii) the Terms and Conditions are legally binding upon them in all respects, and (iv) the Terms and Conditions supersede any and all prior understandings, negotiations, arrangements or agreements between the party of the first part and the party or parties of the second part with respect to the subject matter hereof. Each Owner & Guarantor (as identified below) hereby agrees to fully, completely, unconditionally and irrevocably guaranty to the party of the first part the full and prompt payment and performance of any and all obligations, indebtedness and liabilities of every kind or character whatsoever of the Seller (as identified above) which arises under, out of or in connection with this Agreement, which obligations, indebtedness and liabilities shall be deemed and considered to be the non-contingent, direct, independent and primary obligations of each such Owner & Guarantor which are separate, distinct and apart from those obligations, indebtedness and liabilities which are due and owing to the party of the first part by the Seller under and/or pursuant to this Agreement. The party or parties of the second part hereby expressly (i) agree to the grant of a continuing first priority security interest to the party of the first part over, upon in and to the Collateral in order to secure the obligations, indebtedness and liabilities which are due and owing to the party of the first part by the party or parties of the second part under and/or pursuant to this Agreement, (ii) authorize party of the first part to obtain consumer credit report information, (iii) acknowledge that the party of the first part shall be considered to be Secured Party under and within the meaning of the Uniform Commercial Code and shall be accorded all of the rights and privileges afforded to such designee, and (iv) authorize and direct the party of the first part in such capacity to file a financing statement for the Collateral as contemplated by and otherwise within the purview of Article 9 of the Uniform Commercial Code. Any and all terms used herein having their initial letters capitalized shall be considered to be defined terms which have the meanings ascribed to them in the Terms and Conditions, unless otherwise expressly defined herein in a contrary or inconsistent manner.

## STEP 3: OWNERSHIP: PLEASE ACCOUNT FOR 100%

**SIGNATURES**

|  | OWNER 1 & GUARANTOR | OWNER 2 & GUARANTOR | OWNER 3 & GUARANTOR |
|---|---|---|---|
| OWNER NAME | Johania Tomas Diaz |  |  |
| TITLE | president |  |  |
| HOME ADDRESS | 14741 sw 9 lane |  |  |
| CITY, STATE, ZIP | miami,fl 33194 |  |  |
| CELL PHONE | ▇▇▇▇▇ |  |  |
| SS# | ▇▇▇▇ |  |  |
| DOB | 02/09/2017 |  |  |
| % OWNED | 100 |  |  |
| SIGNATURE | SIGN: *johania Tomas*  DATE: 02/09/17 | SIGN:  DATE: | SIGN:  DATE: |

## NEXT STEPS

- ☐ Forward a copy of your insurance certificate
- ☐ Take a photo of each owner's drivers license
- ☐ Scan or take a photo of a voided check for your business
- ☐ *Gather owner/operator agreements (if applicable)*
- ☐ *Gather aging report and customer list (if applicable)*

**SEND ALL ITEMS LISTED TO:**
**apply@truckingcapital.com** OR
**Fax: (813) 773-4001**

| FFS USE ONLY |
|---|
| Purchaser: Freight Factoring Specialists LLC  Place of acceptance: Hollywood, FL   Date of acceptance: 02/09/2017    By: *Eric Handel* Authorized signor    Title: CFO |

# EXHIBIT C

From: **Steven Newman** <snewman@truckingcapital.com>
Date: Mon, Nov 2, 2020, 3:45 PM
Subject: RE: New Business Proposal
To: Ivan Antigua <a1transportnetwork@gmail.com>
Cc: Maria Perea <mperea@truckingcapital.com>, Eric Mandel <emandel@truckingcapital.com>

I have already told you that. Non recourse is fine for approved debtors. So there is no chargebacks if a company goes out of business. Just make sure only approved brokers are used, no problem. Yes the percentage is 1.5%

**From:** Ivan Antigua <a1transportnetwork@gmail.com>
**Sent:** Monday, November 2, 2020 3:43 PM
**To:** Steven Newman <snewman@truckingcapital.com>
**Cc:** Maria Perea <mperea@truckingcapital.com>; Eric Mandel <emandel@truckingcapital.com>
**Subject:** Re: New Business Proposal

SR the most important thing for me is that they do not charge me chargeback and the contract if I need it because I have new investors in the company and they want all the legal documents signed, sorry let me know if they can do it or not because that is the most important thing for me now and then% we are talking about is 1.5% please confirm.

Thanks, Ivan

Best Regards.

**Ivan Antigua**
President & CEO
A1 Transport Network.
MC # 934152
10100 NW 116th Way Suite# 7
Medley  FL 33178.



# AMENDMENT TO FACTORING MASTER AGREEMENT

This Amendment dated 4/25/2024 is made by FREIGHT FACTORING SPECIALISTS, LLC ("Purchaser") and A1 TRANSPORT NETWORK INC. ("Seller"), parties to the Factoring Master Agreement dated 5/3/2016 and amended from time to time ("Agreement").

I.      Except as set forth in this Amendment, the Agreement is unaffected and shall continue in full force and effect in accordance with its terms. If there is conflict between this amendment and the Agreement or any earlier amendment, the terms of this amendment will prevail.

II.     The Agreement is amended as follows:
        Term - 18 months from mutual execution of this amendment

III.    Overadvance

The Seller may require additional funding in order to fund its ordinary and necessary business expenses ("Overadvance"), and the Purchaser may agree to provide the Overadvance in its sole discretion. In the event of an Overadvance, Seller agrees to pay Purchaser an amount equal to one and 50/100 percent (1.50%) of the amount of the Overadvance for the first seven (7) day period after the Overadvance is transmitted to Purchaser plus one and 50/100 percent (1.50%) for each additional seven (7) day period or part thereof until payments received by Purchaser in collected funds equals the amount of the Overadvance, plus all Charges due Purchaser from Seller at the time. Under this Paragraph III, funds are considered "collected funds" one (1) business days after receipt by Purchaser assuming same is in fact collected.

IV.     Seller agrees to assign its rights to rebate payments paid by COMDATA or equivalent fuel discount program provider as a method of repayment of Overadvances in order to induce Purchaser to extend the period of repayment.

Agreed and accepted to by:

Purchaser:                                          Seller:
FREIGHT FACTORING SPECIALISTS, LLC                  A1 TRANSPORT NETWORK INC.

*Eric Mandel*                                       *IVAN ANTIGUA*

Verified by signNow                                 Verified by signNow
04/26/2024 13:43:29 UTC                             04/26/2024 13:26:45 UTC
bab1739da14b408c895b                                e79dff28d8194b03b98d

By: Eric Mandel, CFO                                By:_____
Date: ___04/26/2024___                                   Signature

                                                    Name/Title: Ivan Antigua, President

                                                    Date: ___04/26/2024___

# EXHIBIT D